UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RONALD MYERS, individually and on )
behalf of a class of similarly situated )
individuals, et al., )
)
      Plaintiffs, )
)
    vs. )      Case No. 4:13CV2192 CDP
)
LEDA J SANDER, et al., )
)
      Defendants. )

## MEMORANDUM AND ORDER

This case, brought by plaintiffs Ronald and Frances Myers against a number

of defendants, grows out of the foreclosure of their home. One of the defendants,

Middlewest Properties, foreclosed on the Myers' property and sought a deficiency

judgment in Missouri state court. After a bench trial, the state court ruled that

Middlewest was not entitled to the deficiency judgment because it, and its agent

Leda Sander, had breached the covenant of good faith and fair dealing and had

come to the court with unclean hands.

As described by the Missouri Court of Appeals, when Middlewest had

initially sold the property to the plaintiffs in December 2007, it knew that it had

previously pledged the property in exchange for a line of credit from First Bank.

The sales price for the home was $215,000, and Middlewest lent the Myers

$209,000, with a balloon payment due six months after purchase, on July 1, 2008. Unbeknownst to the Myers, sometime after they closed on the property, First Bank recorded the deed of trust Middlewest had executed in exchange for the line of credit and placed a $2 million lien on the property.[1]  When the Myers sought to refinance the balloon note, they learned of the lien, but Sanders and Middlewest – who admitted at the state trial that the lien amount was a mistake – failed to take action to remove the lien.  Because of the lien, the Myers could not refinance. When they could not pay the balloon note, Middlewest foreclosed and sought a deficiency judgment.

After prevailing in the state trial court and the Missouri Court of Appeals in defeating Middlewest's attempt to obtain a deficiency judgment, the Myers filed this case in state court.[2]  When they amended their pleadings to add defendants and federal claims, a newly added defendant removed the case to federal court.

I.    **Parties and Claims**

The currently pending complaint is extremely confusing.  Several defendants have now filed motions to dismiss.  The plaintiffs are now suing the following five

---

[1]   The plaintiffs also allege that, sometime around closing, they purchased a title insurance policy from Investors Title Company, which – like Middlewest – failed to disclose the existence of the lien.

[2]   Before removal, the state court denied the defendants' motions to dismiss, which argued that this case should have been brought as a compulsory counterclaim.  The state court also allowed the Myers to file an amended complaint.

defendants in seven counts: Middlewest, its employee Leda Sander, First Bank, its employee Greg Fuesting, and title insurer Investors Title Company.[3]  Each count seeks relief against "respondents, jointly and severally."  The claims are titled as follows: Criminal Recording of First Bank's Nonconsensual Common Law Lien (Count I); Malicious Trespass (Count II); Mail & Wire Fraud (Count III); Violation of African-American Home Ownership Rights (Count IV); Unfair & Deceptive Business Practices (Count V); Unjust Enrichment (Count VI); and Loss of Consortium (Count VII).[4]

Additionally, the plaintiffs seek to represent a class of similarly situated persons.  They define the class as:

> all individuals – in the 10-year period preceding Petitioners' closing – whom Middlewest fraudulently induced to purchase real property and title insurance as part of a real estate scheme designed to (i) part purported buyers from their monies, (ii) retain the real property purportedly sold, (iii) utilize a multi-pronged judicial process to overwhelm and to extort additional monies from the purported buyers.

## II.    Pending Motions

Now pending before me are three motions to dismiss and a motion from plaintiffs styled as a motion for partial summary judgment.  First Bank and its employee Fuesting have moved separately to dismiss the claims against them, as

---

[3]  In November 2013, the plaintiffs voluntarily dismissed two additional defendants, DAS Acquisition Company, LLC and Kevin Spooner.

[4]  As discussed below, the plaintiffs voluntarily dismissed portions of Counts III and IV in their response to the defendants' motions to dismiss.

has defendant Investors Title Company.[5]  The plaintiffs initially failed to respond to the motion to dismiss by Fuesting.  They ignored my order that they show cause why Fuesting's motion should not be granted, then failed to respond to the motion to dismiss by Investors Title.  The plaintiffs then filed a timely response to the First Bank motion to dismiss that purports to respond to all three motions, albeit belatedly.  They did not explain their failure to file earlier timely responses to the two prior motions or to the show cause order.  After Investors Title replied to their response, the plaintiffs filed a motion for leave to file a surreply, again without any explanation about why their initial response was so late.  I will grant the motion for leave insofar as it contains the substance of the plaintiffs' proposed surreply.  In the interest of justice, I have considered the plaintiffs' filings in their entirety, but plaintiffs' counsel is warned that in the future they will be held to the deadlines set by the Federal Rules of Civil Procedure and the local rules of this court.

   As described below, I will dismiss Fuesting entirely.  The allegations against Fuesting are so sparse that the plaintiffs have failed to state any kind of claim against him.  In addition, I will dismiss six of the seven counts against Investors Title Company and First Bank because the plaintiffs have failed to include sufficient facts to support each of the elements of those claims.  The only

---

[5] Defendants Sander and Middlewest filed answers and have not sought to dismiss the case.

remaining claim against these defendants is Count VI, unjust enrichment.  The plaintiffs' motion for partial summary judgment now applies only to defendants Sander and Middlewest, and it remains under submission until those defendants have had an opportunity to respond.  First Bank and Fuesting's joint motion for an extension of time to file a reply is denied as moot.

### III.  <u>Motion to Dismiss Standard</u>

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff.  *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

Rule 8(a)(2), Fed. R. Civ. P., provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  550 U.S. 544, 555 (2007); *accord Aschcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face."  *Twombly*, 550 U.S. at 570.

## IV.  **Defendant Fuesting**

In their complaint, the Myers say very little about defendant Fuesting.  They identify Fuesting as an "employee or agent" of First Bank and later give his title as "Senior Vice President of First Bank."  (¶¶ 6, 62.)  They also state that all of Fuesting's acts or omissions were in furtherance of First Bank's interests or "alternatively," that he was "an undisclosed agent of Middlewest."  (¶¶ 41–42.)  Finally, they state that "First Bank, acting through Fuesting, attempt[ed] to criminally extort funds from Petitioners by directing written demands for payment to Petitioners in violation of penal statute § 575.130.4 RS Mo."  (¶ 40(a).)

That is it.  Although they describe some other actions taken by First Bank, they never allege that any of those other actions was taken by Fuesting as First Bank's employee.  As plaintiffs have confirmed in their brief that they are not seeking to bring a claim of extortion, it is unclear what claim the alleged attempted criminal extortion goes to, if any.  Neither I nor Fuesting is required to guess.  *See Gurman v. Metro Housing & Redev. Auth*., 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (it is "emphatically not the job of either a defendant or the Court" to "pick through the mess" of a complaint that fails to comply with Rule 8(a)(2) to "determine if plaintiffs may have pleaded a viable claim or two").  There is nothing more about Fuesting's role in any of the events described by the plaintiffs, nor any

explanation about how the written demands support any of the claims the plaintiffs have brought.

In short, the complaint does not contain enough factual allegations against Fuesting to state any plausible claim for relief from him. All it does is identify Fuesting's employer and job title and attribute one action to him, disconnected from any of the plaintiffs' claims. This, without more, wholly fails to meet the requirements of Rule 8(a)(2). *See Twombly*, 550 U.S. at 555 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). I will therefore dismiss the claims against Fuesting.

## V.     Defendants Investors Title Company and First Bank

I will address each of the seven counts in turn as they apply to defendants Investors Title Company and First Bank.

Count I: Criminal Recording of First Bank's Nonconsensual Common Law Lien

Under Missouri law, the owner of a property affected by a "nonconsensual common law lien" may seek relief in the state circuit court. *See* Mo. Rev. Stat. § 428.105–135. The Myers have alleged that the First Bank deed of trust (executed in exchange for the $2 million line of credit extended to Middlewest) constituted a

nonconsensual common law lien for which they are entitled to relief. Investors Title and First Bank argue that, for various reasons, the deed of trust was not such a lien and that even if it was, the Myers are not entitled to any or all of the relief they seek.

Missouri law defines a nonconsensual common law lien as:

a document that purports to assert a lien against the assets, real or personal, of any person and that, regardless of any self-description:
(a) Is not expressly provided for by a specific state or federal statute;
(b) Does not depend upon the consent of the owner of the property affected or the existence of a contract for its existence; and
(c) Is not an equitable or constructive lien imposed by a state or federal court of competent jurisdiction.

Mo. Rev. Stat. § 428.105(3).

Among other things, Investors Title argues that the deed of trust cannot be a nonconsensual common law lien because it depended upon the consent of Middlewest, which was the "owner of the property affected" at the time the deed of trust was executed. It relies on *HSBC Bank USA, Nat'l Ass'n v. Weber*, 400 S.W.3d 32, 34 (W.D. Mo. 2013) in support of its contention. In *Weber*, the only Missouri appellate decision to interpret Section 428.105(3), the court found that a "notice" placed on some properties by their owner during pre-foreclosure could not be a nonconsensual common law lien because the owner had consented to the

notice.  The fact that he was in default at the time he executed and recorded the notice was of no consequence; he was still the owner.

Although it provides some guidance, *Weber* does not squarely address the situation here, where a lien was executed while one party owned the property at issue, but recorded after the property changed hands.  Nonetheless, I agree with Investors Title that it was Middlewest's consent – and not the Myers' – that matters for purposes of a determining whether the deed of trust was a nonconsensual common law lien.

There are two parts of the statute that provide support for this conclusion.  First, Section 428.105(3)(b) excludes liens that depend on the owner's consent for their "existence."  It is well established that a deed of trust exists as soon as it is executed, even if it has not yet been recorded.  *See Southern v. Southern*, 52 S.W.2d 868 (Mo. 1932) ("[r]ecording is not essential in transferring title as between the parties themselves").  Second, Section 428.120 gives remedies for persons with an interest in property "subject to a *recorded* nonconsensual common law lien," which makes it clear that a lien can be a nonconsensual common law lien even if it has not been recorded.  This confirms that it is the consent of the owner at the time of execution – and not recording – that affects whether a lien can be deemed a nonconsensual common law lien.  Because Middlewest was the owner

of "the property affected" at the time it consented to and executed the First Bank deed of trust, that deed of trust cannot constitute a nonconsensual common law lien. Therefore, Count I will be dismissed as to the moving parties.

## Count II: Malicious Trespass

In Count II, the Myers allege that the defendants "maliciously or wantonly damaged or destroyed" their property in violation of Mo. Rev. Stat. § 537.330, providing double damages for malicious trespass. The Missouri statute applies only to "personal property, goods, chattels, furniture or livestock," *id.*, and a Missouri appellate court has interpreted the statute to include intangible property. *See Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 599 (Mo. Ct. App. 2000). The statute, by its very wording, does not apply to real property. *See id.* at 600. Although the Myers allege that "[b]y filing the First Bank Lien, First Bank interfered with Petitioners' real property and intangible property without consent or license," they do not identify the intangible property they are referring to. They also do not allege any facts in support of their allegation that "the Conspiracy" (in which they include Investors Title and First Bank) damaged or destroyed their personal property, tangible or intangible.

In their surreply, the plaintiffs argue that the intangible property destroyed by the Conspiracy was their "contractual and ownership rights." First, "ownership

– 10 –

rights" are, under these circumstances, just another way of describing real property, which is not included under the Missouri malicious trespass statute. Further, the plaintiffs do not identify what ownership or contractual rights were destroyed by the Conspiracy. Although they allege that Investors Title and First Bank purposely impaired their ability to refinance their mortgage, they do not allege that a right to refinance was somehow an ownership or contractual right. In short, the Myers' allegations are insufficient to state a plausible claim for malicious trespass against Investors Title and First Bank, and Count II will be dismissed as against both defendants.

### Count III: Mail & Wire Fraud

There is no private cause of action for mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. To the extent the Myers seek to assert a claim for mail and wire fraud, it must fail. The Myers also appear to seek relief for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c). But in their opposition to the defendants' motions to dismiss, the Myers withdraw any civil RICO claims. Therefore, the motions to dismiss will be granted as to Count III.

### Count IV: Violation of African-American Home Ownership Rights

The Myers allege that "the Conspiracy" violated "42 U.S.C. §§ 1981, 1982,

and/or 3613" by impairing or destroying their right to contract and using unfair and deceptive practices. They allege that the defendants "directed the Conspiracy at African-American Middlewest buyers" and that "no Caucasian-American has been an apparent victim of the Conspiracy."

The parties disagree over the applicable statute of limitations for claims brought under Sections 1981 and 1982. Some claims brought under Section 1981 are governed by the four-year "catch-all" statute of limitations in 28 U.S.C. § 1658. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). However, claims that would have existed before the 1990 expansion of Section 1981 – as well as all Section 1982 claims – are, as plaintiffs argue, subject to the limitations period governing the most analogous state law cause of action. *See Harris v. Norfolk & W. Ry. Co.*, 616 F.2d 377, 379 (8th Cir. 1980). The Supreme Court has held that, despite the diversity of claims possible under the civil rights statutes, courts should always use the forum state's statute of limitations governing personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985) (analyzing Section 1983 claims). In Missouri, there is a five-year statute of limitations governing personal injury claims. Mo. Rev. Stat. § 516.120; *see also Sulik v. Taney Cnty., Mo.*, 393 F.2d 765, 767 (8th Cir. 2005).

In this case, the Myers allege that "the Conspiracy" (that is, First Bank and Investors Title, along with other defendants) intentionally interfered with their right to refinance their mortgage loan because of their race. Assuming without deciding that this is an appropriate claim under Section 1981, it arises under the pre-1990 expansion to Section 1981. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 176–77 (1989) (prior version of statute protected the right to form a contract). Therefore, the five-year statute of limitations applies.

Nonetheless, even a five-year statute of limitations cannot save the Myers' claims under Sections 1981 or 1982. The Myers assert that the filing of the First Bank deed of trust is what disrupted their ability to form a refinancing contract. Therefore, their cause of action accrued – at the latest – when they attempted to refinance and were stymied by the deed of trust. *See, e.g., Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013) (claim accrues as soon as the plaintiff could file suit and obtain relief); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (accrual date is a matter of federal law). The Myers discovered the deed of trust when they attempted to refinance their mortgage loan sometime before the balloon payment became due on July 1, 2008, but they did not amend their petition to assert this claim until September 16, 2013. The Myers argue that the limitations period should be measured from the date of the foreclosure sale on

September 19, 2008, but this is several months after the Myers knew about – and tried to remedy – the filing of the First Bank lien. As such, it is not the appropriate accrual date. *See, e.g., Clark v. Sears, Roebuck & Co.*, 827 F. Supp. 1216, 1222 (E.D. Pa. 1993) (limitations period for Section 1981 claims begins "when the plaintiff knows or reasonably should know that the discriminatory act has occurred"). In conclusion, the Myers did not bring the claim within five years of its accrual and so it is time-barred under Sections 1981 and 1982. *See Bradley Timberland Resources v. Bradley Lumber Co.*, 712 F.3d 401, 406 (8th Cir. 2013) (motion to dismiss may be granted when a claim is barred under a statute of limitations).

Under this count, the Myers also cite 42 U.S.C. § 3613, which provides for enforcement of the Fair Housing Act by private persons. In their response to the defendants' motions to dismiss, the Myers withdraw any FHA claim. As such, Count IV will be dismissed as against Investors Title and First Bank.

<u>Count V: Unfair & Deceptive Business Practices</u>

In Count V, the Myers allege that the defendants violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.* To establish a claim under the MMPA, plaintiffs must allege that they (1) leased or purchased a product or service; (2) primarily for personal, family, or household purposes; and

(3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by Mo. Rev. Stat. § 407.020.  Mo. Rev. Stat. § 407.025; *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. banc 2007).

With respect to the fourth element, a plaintiff must allege that the defendant "used or employed a deception, fraud, false pretense, false promise, misrepresentation, unfair practice, concealment, suppression, or omission in connection with the purchase of the product or service at issue." *Scanio v. Zale Delaware Inc.,* 2012 WL 368741, at *2 (E.D. Mo. Feb 3, 2012).  Allegations of fraud or mistake under the MMPA must meet the heightened pleading requirements of Rule 9(b), Fed. R. Civ. P.  *See Khaliki v. Helzberg Diamond Shops, Inc.*, 2011 WL 1326660, at *2–3 (W.D. Mo. Apr. 6, 2011).

Rule 9(b) requires that the circumstances underlying a fraud claim be pled "with particularity."  This rule is to be interpreted "in harmony with the principles of notice pleading, and to satisfy it, the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." *Drobnak v. Andersen Corp.,* 561 F.3d 778, 783 (8th Cir. 2009).  Simply put, the complaint must plead the who, what, where, when, and how of the fraud. *Id.*

As a preliminary matter, both defendants argue that the Myers make no allegations against them relating to this count. I disagree. Although the relevant allegations against do not appear in the Myers' description of Count V, they are listed earlier in the complaint and incorporated by reference under Count V.

*Investors Title*

The scope of the Merchandising Practices Act is broad, but it is subject to two exceptions. Most importantly here, the statute does not apply to:

> Any institution, company, or entity that is subject to chartering, licensing, or regulation by the director of the department of insurance, financial institutions and professional registration under chapter 354 or chapters 374 to 385 . . . unless such directors specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute.

Mo. Rev. Stat. § 407.020.2(2). Investors Title argues that it is a company subject to regulation by the director of the department of insurance as set out in Chapter 381 of the Missouri Revised Statutes and is therefore exempt from the MMPA. I agree. Chapter 381 is referred to as the "Missouri Title Insurance Act" and its purpose is "provide the state of Missouri with a comprehensive body of law for the effective regulation and supervision of title insurance business . . . ." Mo. Rev. Stat. § 381.011. Among other things, Chapter 381 requires that in most cases, title agents and agencies must obtain a license, designate a qualified principal to pass an

examination, attend continuing education courses, pay fees for license renewal, and permit their books and records to be inspected by the director during normal business hours. *See id.* §§ 381.115, 381.118, and 381.122. Except as otherwise provided within the chapter, its provisions "generally shall apply to title insurance, title insurers, and title agents." *Id.* § 381.011. Although Investors Title did not argue such, it is in fact licensed as required.[6] Therefore, it falls within the exception to the MMPA. I have found no evidence that the director of insurance, financial institutions and professional registration has directed the Attorney General to implement the MMPA as against title insurance companies, nor any evidence that any statute provides to private citizens an MMPA cause of action against title insurance companies.[7] *See Smith v. J. Wells Inv. Grp., LLC*, No. 0722-

---

[6] The Missouri Department of Insurance, Financial Institutions & Professional Registration maintains a website where it lists licensed entities and individuals. *See* "Licensee Look-Up," https://sbs-mo.naic.org/Lion-Web/jsp/sbsreports/AgentLookup.jsp.

[7] The Myers argue that the exemption for title companies and other regulated businesses has been nullified. They base this argument on a 1992 amendment to Mo. Rev. Stat. § 407.020.2(2). In that year, the Missouri legislature modified the exemption, adding the emphasized language below: "Any institution, company, or entity that is subject to chartering, licensing, or regulation by the director of the department of insurance, financial institutions and professional registration under chapter 354 or chapters 374 to 385 . . . unless such directors specifically authorize the attorney general to implement the powers of this chapter ***or such powers are provided to either the attorney general or a private citizen by statute.***" The Myers argue that because Section 407.025 gives private citizens the general right to bring MMPA actions, it constitutes a "power" given to private citizens "by statute" that takes precedence over the exemption. I disagree. This is a circular argument. In order to negate the title insurance company exemption, the Myers would have to point to a statute giving private citizens the power to enforce Section 407.020 *specifically* against title companies. *Accord Rashaw v. United Consumers Credit Union*, No. 11CV105 ODS, 2011 WL 2110806, at *6 (W.D. Mo. May 26, 2011) (same for credit unions),

CC09226, 2008 WL 8487908, at *2–*3 (Mo. Cir. Ct. June 10, 2008) (granting title insurance company's motion to dismiss plaintiff's MMPA claim against it). Accordingly, I will dismiss Count V as against Investors Title.

*First Bank*

With regard to First Bank, the Myers have failed to allege enough with respect to the fourth element of an MMPA claim, that First Bank engaged in an unfair practice, deception, false promise, omission, or other act declared unlawful by Mo. Rev. Stat. § 407.020. The Myers do not explain what First Bank misrepresented (or whether it made any representations to the Myers) or when or how it made those representations. They allege that First Bank filed the deed of trust and made written demands to the Myers for payment, but they do not identify what that payment would have been for or why the filing of the deed of trust was fraudulent. The Myers do not deny that they were in default on the mortgage loan, as initially agreed to, so it is not obvious that the written demands were somehow fraudulent. Although they identify the failure to immediately record the deed of trust as a concealment, this was not done "in connection with" the Myers' purchase of any good or service, as required by the statute. *See State ex rel. Koster v. Portfolio Recovery Assocs., LLC*, 351 S.W.3d 661, 666 (Mo. Ct. App. 2011)

---

*affirmed by* 685 F.3d 739, 745 (8th Cir. 2012) ("The contention that one provision of the MMPA completely negates another violates well-accepted principles of statutory construction.").

(defendant's attempted collection of a debt was not done "in connection with" the sales transaction leading to the debt because there was "no deception or unfair practice made to the consumer at or prior to the initial sales transaction between the consumer and the seller").  Because the Myers have not met the pleading requirements of Rule 9(b), Fed. R. Civ. P., with respect to their MMPA claim against First Bank, Count V will be dismissed as against First Bank.

### Count VI: Unjust Enrichment

In Count VI, the Myers bring a claim of unjust enrichment.  The elements of a cause of action for unjust enrichment are that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable or unjust circumstances.  *Hertz Corp. v. Raks Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo. Ct. App. 2006).  Under Missouri law, this third element, is "the most significant and most difficult of the elements."  *US Bank Nat'l Ass'n v. Cox*, 341 S.W.3d 846, 852 (Mo. Ct. App. 2011).  To determine if a defendant accepted or retained a benefit unjustly, a court considers "whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage."  *S&J, Inc. v. McLoud & Co., L.L.C.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003).

As with Count V, the defendants argue that the Myers make no allegations against them relating to this count, and it should therefore be dismissed. Again, although the specific allegations against Investors Title and First Bank do not appear in the Myers' description of Count VI, they are listed earlier in the complaint and incorporated by reference under Count VI.

The Myers have alleged that they paid Investors Title for a title insurance policy, that Investors Title knew from the outset that it would not provide any services in exchange, and that in fact it did not. Though clumsily pled, these factual allegations are sufficient to state a claim for unjust enrichment. *See Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 544–45 (S.D. Iowa 2007) (plaintiffs' claim for unjust enrichment was sufficient to withstand 12(b)(6) motion where they alleged they paid chiropractor for unnecessary services). Similarly, the Myers have alleged that they conferred a benefit on First Bank in the form of their property as security for the line of credit First Bank extended to Middlewest. They have alleged that they alerted First Bank that Middlewest no longer owned the property in question but that First Bank failed to release the deed of trust until late July 2008. Again, the Myers' complaint is not as clear as it might have been, but I find that they have stated a claim for unjust enrichment. Therefore, Count VI will not be dismissed as to either defendant.

## Count VII: Loss of Consortium

Under Missouri law, a spouse seeking compensation for loss of consortium must show that he or she suffered damages arising out of the other's injuries. *Lear v. Norfolk & Western Ry. Co.*, 815 S.W.2d 12, 14 (Mo. Ct. App. 1991). It does not follow automatically from one spouse's injury that the other spouse suffered damages derivative of the injury. *Id.* Here, although the Myers allege that they suffered "emotional distress, anxiety [and] sleeplessness," they have not alleged any derivative loss of society, services, affection, companionship, or conjugal rights that could support a loss of consortium claim. *See Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 542 (Mo. banc 1963). Therefore, Count VII will be dismissed as to the moving defendants.

## Investors Title's Other Motions

Investors Title has moved, in the alternative, for a more definite statement in the event the plaintiffs' claims were not dismissed. Rule 12(e), Fed. R. Civ. P., permits motions for a more definite statement "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Such a motion is proper "when a party is unable to determine issues he must meet, or where there is a major ambiguity or omission in the complaint that renders it unanswerable." *Tinder v. Lewis Cnty.*

*Nursing Home Dist.*, 207 F. Supp. 2d 951, 959 (E.D. Mo. 2001) (citations omitted).

Motions for a more definite statement are rarely granted, however, in light of the

liberal notice pleading standard of Rule 8 and the liberal discovery available to

both sides. *Tinder*, 207 F. Supp. 2d at 959–60. As it applies to the remaining

count against Investors Title, I find that their motion should be denied. The Myers

allege enough facts in support of their unjust enrichment claim for Investors Title

to be able to frame a responsive pleading.

Investors Title has also moved to strike various allegations from the

complaint under Rule 12(f). This rule provides for striking matters that are

"redundant, immaterial, impertinent, or scandalous" from a pleading. Parties filing

a motion to strike under Rule 12(f) bear the burden of "provid[ing] the Court any

reason why this language is immaterial, impertinent, or scandalous." *Copeland v.

Hussmann Corp.*, 462 F. Supp. 2d 1012, 1023 n.11 (E.D. Mo. 2006). Investors

Title has failed to satisfy this burden because it has offered no reason or support for

its assertions that certain matters should be stricken. Therefore, its motion to strike

will be denied.

## VII.  <u>Conclusion</u>

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Greg Fuesting's motion to dismiss [#12] is granted. Fuesting is dismissed from the case.

**IT IS FURTHER ORDERED** that:

Defendant Investors Title Company's motion to dismiss [#33] is granted in part. Counts I, II, III, IV, V, and VII, are dismissed as to Investors Title. The only remaining count against Investors Title Company is Count VI, Unjust Enrichment.

Defendant First Bank's motion to dismiss [#35] is granted in part. Counts I, II, III, IV, V, and VII, are dismissed as to First Bank. The only remaining count against First Bank is Count VI, Unjust Enrichment.

Defendant Investors Title Company's motion for a more definite statement and motion to strike are denied.

Plaintiffs' motion for leave to respond to Investors Title's reply [#41] is granted insofar as their motion provides the substance of their proposed reply. No further surreply may be filed.

Defendants Greg Fuesting and First Bank's motion for extension of time to file a reply [#42] is denied as moot.

Plaintiffs' motion for partial summary judgment remains under submission.

**IT IS FINALLY ORDERED** that defendants Investors Title Company and First Bank shall file answers to Count VI within **fourteen days of the date of this Memorandum and Order**.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 3rd day of February, 2014.